COLLEEN TONKOVIC, Plaintiff-Appellee, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellant.

First District (4th Division)   No. 1—95—2564

Opinion filed July 25, 1996.

Fagel & Harber, of Chicago (Steven J. Teplinsky, Lawrence T. Krulewich, and Sara L. Thomas, of counsel), for appellant.

Martin O. Holland, of Chicago, for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board), appeals from the circuit court's order reversing its decision to deny plaintiff, Colleen Tonkovic (Tonkovic), widow's duty death benefits pursuant to section 6—140 of the Illinois Pension Code. 40 ILCS 5/1—101 *et seq.* (West 1994). We affirm.

Plaintiff's decedent, Martin Tonkovic (decedent), was employed by the City of Chicago as a fire fighter on February 16, 1969. On April 9, 1980, while fighting a fire, decedent suffered a heart attack. He was examined by the Board's physician, Dr. George Motto. Dr. Motto asserted that decedent was without symptoms of heart disease

prior to April 9, 1980, but that after that date decedent had documented arteriosclerotic heart disease as manifested by the heart attack. With knowledge of the heart disease and because of decedent's heart attack, Dr. Motto prescribed that decedent should not perform the duties associated with the position of a fire fighter. Furthermore, Dr. Motto found that decedent's condition fell within the parameters of section 6—151 of the Illinois Pension Code, which provides that an active fireman who becomes disabled as the result of a specific injury resulting from an act or acts of duty is eligible for duty disability benefits. 40 ILCS 5/6—151 (West 1994).

As a result of Dr. Motto's findings, the Board granted decedent duty disability. By statute, said disability benefits were to continue during the period of the disability until decedent reached the age of compulsory retirement. 40 ILCS 5/6—151 (West 1994).

On April 30, 1994, decedent suffered another heart attack and died. The death certificate, signed by Dr. Martin Rubin, attributes decedent's demise to "respiratory failure, due to or as a consequence of a ruptured aortic aneurysm, due to or as a consequence of artherosclerotic [sic] heart disease." No autopsy was performed.

Decedent's widow, Tonkovic, applied to the Board for widow's duty death benefits pursuant to section 6—140 of the Illinois Pension Code. 40 ILCS 5/6—140 (West 1994). The Board conducted a hearing on the matter on August 17, 1994.

At the hearing, Tonkovic presented decedent's death certificate and various documents concerning his medical history. The Board's physician, Dr. Motto, testified that although decedent suffered a duty-related heart attack in 1980, the heart attack did not contribute to his demise in 1994. Instead, Dr. Motto testified that decedent died as a result of abdominal aortic aneurysm. Dr. Motto claimed a heart attack and an abdominal aneurysm are not connected, except that aneurysms and heart disease are caused by a similar process, that is, dissection or arteriosclerosis of the abdominal aorta. According to Dr. Motto, the recognized causes of arteriosclerosis are multifactorial: stress, high blood pressure, cholesterol, heredity, and smoking. He admitted, however, that long-term exposure to smoke, such as decedent's 11 years of being a fire fighter before self-contained breathing apparatus were utilized, may have caused the arteriosclerosis.

Relying upon the testimony of Dr. Motto that decedent's 1980 heart attack did not contribute to his demise, the Board denied Tonkovic's request for widow's duty death benefits and instead granted her ordinary widow's benefits. Tonkovic filed a complaint for administrative review in the circuit court of Cook County.

On March 21, 1995, the circuit court conducted a hearing on

Tonkovic's complaint. It found that the Board's decision was against the manifest weight of the evidence and entered an order reversing the decision of the Board. In so doing, the circuit court reasoned that because Dr. Motto admitted arteriosclerosis disease caused the aneurysm and that decedent had documented arteriosclerotic heart disease as manifested by the 1980 heart attack, there was no question that decedent died of arteriosclerosis. Furthermore, the circuit court found the Board ignored the fact that because decedent did not smoke, suffer from hypertension, and had no family history of arteriosclerosis, his greatest risk factor for arteriosclerotic heart disease was his employment as a fire fighter. The Board appealed the circuit court's order.

A reviewing court may only set aside findings of an administrative agency's questions of fact if they are against the manifest weight of the evidence. *Ernzen v. Board of Trustees of Batavia Firemen's Pension Fund*, 96 Ill. App. 3d 1143, 1147, 421 N.E.2d 1065 (1981). A judgment will only be found as against the manifest weight of the evidence when it appears from the record that an opposite result is clearly evident. *Ernzen*, 96 Ill. App. 3d at 1148, 421 N.E.2d at 1068.

■ Section 6—140 of the Illinois Pension Code, dealing with widow's duty death benefits, provides in relevant part as follows:

> "The annuity for the widow of a fireman whose death results from the performance of an act or acts of duty shall be an amount equal to 50% of the current annual salary attached to the classified position to which the fireman was certified at the time of his death and 75% thereof after December 31, 1972, and it shall be payable to the widow until the fireman, had he lived, would have attained the age prescribed for compulsory retirement.
> ***
> Unless the performance of an act or acts of duty results directly in the death of the fireman, or prevents him from subsequently resuming active service in the fire department, the annuity herein provided shall not be paid ***." 40 ILCS 5/6—140 (West 1994).

On appeal, the Board contends Tonkovic is not entitled to widow's duty death benefits because she failed to prove decedent's death resulted from "an act or acts of duty." Moreover, the Board argues the circuit court ignored the applicable standard of review and improperly reweighed the evidence.

For Tonkovic to receive widow's duty death benefits, the Board argues that she has the burden of proving that decedent's death resulted from his performance of an act or acts of duty. The Board cites the testimony of its expert, Dr. Motto, that although smoke inhalation caused decedent's 1980 heart attack, that heart attack was not the direct cause of decedent's death 14 years later.

The Board's causation argument ignores the second clause of the statute. When construing a statute, we must first consider the plain language of the statute. *In re Marriage of O'Neill,* 138 Ill. 2d 487, 498-99, 563 N.E.2d 494, 499-500 (1990). Here, the plain language of the second clause provides that a surviving spouse is eligible for duty death benefits if the decedent fire fighter's performance of an act or acts of duty prevented him from resuming active service until his or her death. Under this clause it is irrelevant to the question of eligibility for widow's duty death benefits whether decedent's 1980 heart attack resulted directly in his death 14 years later. Rather, the focus is whether the fire fighter is injured due to an act or acts of duty and then dies without having returned to active service.

■ The evidence is uncontroverted that decedent served as a fire fighter for 11 years prior to the fire department's introduction of self-contained breathing apparatus for use by fire fighters during fires. And, ironically, the Board's own physician, Dr. Motto, admitted long-term smoke inhalation contributed to decedent's arteriosclerotic heart disease. Indeed, it was Dr. Motto who initially cleared decedent to receive duty disability benefits, stating that decedent's 1980 heart attack was induced by smoke inhalation.

Having placed decedent on duty disability in 1980, the Board necessarily admits that decedent was injured due to an act or acts of duty. Decedent remained on duty disability, subject to recall to active duty upon a physician's certification of fitness, until his death in 1994. Accordingly, Tonkovic qualifies for widow's duty death benefits under the second clause of section 6—140 of the Illinois Pension Code. 40 ILCS 5/6—140 (West 1994).

■ The Board next argues the circuit court ignored the applicable standard of review and improperly reweighed the evidence when it considered the presence or absence of various risk factors for atherosclerotic heart disease in deciding that the Board had erred. As previously suggested, a review of the record indicates the Board failed to apply the second clause of section 6—140 (40 ILCS 5/6—140 (West 1994)), it having relied instead upon the first clause, which requires proof of direct causation, for its decision to deny Tonkovic her widow's duty death benefits. When the second clause is properly applied to the undisputed facts, it is clear that the Board's decision to deny Tonkovic her widow's duty death benefits was against the manifest weight of the evidence.

Where the decision of the lower court is correct, the reasons acted upon by it are immaterial. *Murphy v. Lindahl,* 24 Ill. App. 2d 461, 468, 165 N.E.2d 340, 343 (1960); 82 A.L.R.2d 1410 (1962). Thus, even assuming, without deciding, that the circuit court ignored the

applicable standard of review and improperly reweighed the evidence, its decision was proper. Accordingly, we affirm.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.